QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Susheel Kirpalani
Scott C. Shelley
Robert K. Dakis
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel.: (212) 849-7000
Fax: (212) 849-7100

*Counsel to Joint Liquidators of Millennium
Global Emerging Credit Master Fund and
Millennium Global Emerging Credit Fund*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MILLENNIUM GLOBAL EMERGING CREDIT MASTER FUND LIMITED,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 11-_____ |
| In re:<br><br>MILLENNIUM GLOBAL EMERGING CREDIT FUND LIMITED,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 11-_____ |

**VERIFIED PETITION OF FOREIGN REPRESENTATIVES
MICHAEL W. MORRISON, CHARLES THRESH AND RICHARD HEIS IN
SUPPORT OF APPLICATION OF MILLENNIUM GLOBAL EMERGING
CREDIT MASTER FUND LIMITED AND MILLENNIUM GLOBAL EMERGING
CREDIT FUND LIMITED FOR RECOGNITION OF FOREIGN
MAIN PROCEEDING PURSUANT TO SECTION 1517 OF THE
BANKRUPTCY CODE AND SEEKING RELATED RELIEF**

Petitioners Michael W. Morrison, Charles Thresh and Richard Heis (together, the "Joint Liquidators" or the "Petitioners"), are the court-appointed liquidators and foreign representatives of Millennium Global Emerging Credit Master Fund Limited (the "Master Fund") and Millennium Global Emerging Credit Fund Limited (the "Feeder Fund" and, together with the Master Fund, the "Funds") in proceedings (the "Bermuda Proceedings") governed by the Companies Act 1981 (the "Companies Act") pending before the Supreme Court of Bermuda, Commercial Court (the "Bermuda Court").

The Petitioners have commenced these chapter 15 cases ancillary to the Bermuda Proceedings and respectfully file this Verified Petition for Recognition for each of the Funds (together, the "Chapter 15 Petitions") with the required accompanying documentation pursuant to sections 1504 and 1515 of title 11 of the United States Code (the "Bankruptcy Code") for the entry of an order recognizing the Bermuda Proceedings as "foreign main proceedings," or in the alternative as "foreign non-main proceedings," and granting relief under sections 1520 and 1521 of the Bankruptcy Code. In support of the Chapter 15 Petitions, the Petitioners respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Funds were a pair of Bermuda based funds that invested primarily in sovereign and corporate debt instruments from issuers in developing countries in Europe, Asia, South America, Latin America, and the Middle East. The Funds, however, were ill equipped to survive the financial downturn of late 2008 and, in October 2008 were placed into liquidation in

2

Bermuda. Following their appointment, the Joint Liquidators commenced an investigation into the financial affairs of the Funds and found discrepancies in certain asset valuations. The Joint Liquidators have continued their investigation and, where appropriate, commenced litigation regarding these valuation issues. The Joint Liquidators are now seeking chapter 15 relief in order to continue their investigation and, if necessary, commence litigation here in the United States.

2. Petitioners commenced this case pursuant to 11 U.S.C. §§ 1504, 1509, and 1517 seeking recognition of two related foreign liquidation proceedings that are currently pending before the Bermuda Court, and seeking relief as of right under section 1520 and further relief available under section 1521. As demonstrated by this Verified Petition, the Exhibits hereto, the accompanying Declaration of Michael W. Morrison, the accompanying Declaration of Robin Mayor, and the Memorandum of Law in Support of (A) Verified Petition of Millennium Global Emerging Credit Master Fund Limited and Millennium Global Emerging Credit Fund Limited for Recognition of Foreign Proceedings under Chapter 15 of the Bankruptcy Code and (B) Motion for Provisional and, upon Recognition, Final Relief Pursuant to Sections 1519, 1521 and 105(a) (a) of the Bankruptcy Code, Petitioners are individual persons who are the duly authorized foreign representatives of the Funds and, as such, are entitled to directly petition this court for recognition of the Bermuda Proceedings under 11 U.S.C. § 1509. Each of the Bermuda Proceedings is a foreign proceeding under 11 U.S.C. § 101(23). Each of the Bermuda Proceedings is a foreign main proceeding as defined by 11 U.S.C. § 1502(4) because each Bermuda Proceeding is pending in Bermuda, which is the location of each Fund's registered office and center of main interests. See 11 U.S.C. § 1516(c) and 1517(b)(1).

3. Because recognition of the Bermuda Proceedings would not be contrary to public policy under 11 U.S.C. § 1506, each Bermuda Proceeding is a foreign main proceeding under 11 U.S.C. § 1502(4), Petitioners are foreign representatives who are persons, and Petitioners have complied with all requirements of 11 U.S.C. § 1515 and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Petitioners are entitled to seek entry of an Order, substantially in the form of the proposed order annexed hereto as Exhibit A, recognizing the Bermuda Proceedings as foreign main proceedings under 11 U.S.C. § 1517(b)(1).

4. The following documents are annexed hereto in support of this Verified Petition:

(a) Pursuant to 11 U.S.C. § 1515(b), certified copies of the Orders of the Bermuda Court commencing each of the Fund's proceedings and appointing Petitioners as the Joint Provisional Liquidators, are annexed hereto as Exhibit B.

(b) Certified copies of the Orders of the Bermuda Court appointing Petitioners as Joint Liquidators are annexed hereto as Exhibit C.

(c) A certified copy of the Order of the Bermuda Court dated June 22, 2011, authorizing Petitioners to seek recognition of the Bermuda Proceedings by this Court, is annexed hereto as Exhibit D.

(d) Pursuant to 11 U.S.C. § 1515(c), a statement certifying, among other things, that no other foreign proceedings with respect to the Master Fund are known to the Joint Liquidators, is annexed hereto as Exhibit E.

(e) Pursuant to Bankruptcy Rule 1007(a)(4), a list of administrators, and entities affected by the request for provisional relief is annexed hereto as Exhibit F.

(f) Pursuant to Bankruptcy Rules 1007(a)(4) and 7007.1, a corporate ownership statement is annexed hereto as Exhibit G.

5. Each of the documents set forth above, including the Declaration of Michael W. Morrison (the "Morrison Declaration"), is incorporated by reference as if fully set forth herein.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 1501. Venue with respect to this Verified Petition is proper pursuant to 28 U.S.C. § 1410. This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

**FACTUAL BACKGROUND**

I. **Operation of the Funds prior to October 2008**

   A. Creation and Operation of the Feeder Fund

7. The Feeder Fund was incorporated in Bermuda on October 12, 2006 to carry on the business of a mutual fund within the meaning of section 156A of the Companies Act. A copy of the Feeder Fund's certificate of incorporation is attached to the Morrison Declaration as Ex. E. The Feeder Fund began operations in December 2006.

8. The Feeder Fund was approved as a Bermuda Institutional Scheme under the Bermuda Money Authority (Collective Investment Scheme Classification) Regulations 1998 (the "Regulations"). The Regulations were repealed by the Bermuda Investment Funds Act 2006 (the "Investments Act"), which came into force on March 7, 2007. The Feeder Fund was reauthorized as an Institutional Fund pursuant to the Investments Act. An authorized fund under the Investments Act is required to, inter alia, prepare audited annual financial statements; appoint an investment manager, an auditor and an administrator; if incorporated in Bermuda, entrust fund property to an independent custodian who must be licensed in Bermuda.

9. The Feeder Fund's stated investment objective was to achieve capital appreciation, consistent with relative stability of the principal, through investments primarily in corporate and sovereign debt instruments from issuers whose headquarters and operating

5

business were located principally in developing Europe, Asia, Latin America, the Middle East and Africa.

10. The Feeder Fund had no employees and acted through its directors, Mr Michael Collins, Ms Deborah Sebire and Mr James Keyes (collectively the "Directors"). Messrs Collins and Keyes were resident in Bermuda. Ms Sebire was resident in Guernsey. The Feeder Fund's registered offices were in Bermuda, at Argonaut House. 5 Park Road, Hamilton HM 09. A copy of the notice of the Feeder Fund's address is attached to the Morrison Declaration as Ex. F. The Feeder Fund's administrator, registrar and transfer agent was Argonaut Limited, a Bermuda company. Butterfield Trust (Bermuda) Limited, a subsidiary of the Bank of NT Butterfield & Son Limited, a Bermuda-authorized bank which is a public company, was the custodian of the Funds' assets.

11. The Feeder Fund entered into a number of contracts with various providers for management, investment management, back-office and valuation services.

12. The Feeder Fund received subscriptions of approximately $390 million. It reported growth of 28% for 2007.

B. Creation and Operation of the Master Fund

13. In 2007, the Feeder Fund was reorganized into a master-feeder structure with the Master Funds. The Joint Liquidators believe the purpose of this reorganization was to separate the trading fund from the investment entity and to facilitate investment from U.S. investors.

14. The Master Fund was incorporated in Bermuda on September 20, 2007, also to carry on the business of a mutual fund within the meaning of section 156A of the Companies Act 1981 of Bermuda. A copy of the Master Fund's certificate of incorporation is attached to the Morrison Declaration as Ex. G. The Master Fund was excluded from authorization under the

Investments Act on the basis that it had fewer than 20 participants and was not marketed to the public generally and was therefore a private fund within the meaning of the Act. The Master Fund's registered offices were in Bermuda, at Argonaut House, 5 Park Road, Hamilton HM 09. A copy of the notice of the Master Fund's is attached to the Morrison Declaration as Ex. H. The Master Fund had the same custodian and administrator as the Feeder Fund.

15. The Feeder Fund invested substantially all of its assets in the Master Fund. On November 1, 2007, the net assets of the Feeder Fund were transferred to the Master Fund and the Feeder Fund acquired 100% of the shares in the Master Fund. The Feeder Fund's service agreements were novated in favor of the Master Fund. A small percentage of the shares of the Master Fund were subsequently transferred to Millennium Global Emerging Credit Fund, L.P. (the "Delaware Fund"), a Delaware limited partnership that could receive investments from United States taxable investors. The Delaware Fund invested all its funds in the Master Fund.[1]

16. The Master Fund then invested in a portfolio of assets, primarily in corporate and sovereign debt instruments from issuers whose headquarters and operating business were located principally in developing Europe, Asia, Latin America, the Middle East and Africa.

17. The Funds entered into prime brokerage agreements with Credit Suisse and Citigroup Inc. (the "Prime Brokers").

18. The Funds entered into agreements for derivative transactions based on the International Swaps and Derivative Association master agreements with Banco Santander Hispano and Central SA, Barclays Bank Plc, BNP Paribas, UBS AG, Citigroup Global Markets Ltd, Citibank NA, Credit Suisse, Bayerische Hypo-Und Vereinsbank AG, Morgan Stanley & Co

---

[1] As of September 30, 2008, the Delaware Fund owned approximately 3% of the shares in the Master Fund. The remaining shares were owned by the Feeder Fund.

International Plc, Standard Chartered Bank, JP Morgan Chase Bank NA, and Calyon (the "<u>ISDA Counterparties</u>").

19. The Funds' reported performance through 2008 appeared broadly consistent with the performance of other similarly constituted funds.

C. <u>Appointment of provisional and permanent liquidators to the Funds</u>

20. In early to mid October 2008, the Master Fund suffered severe cash flow problems. Indeed, on 6 October 2008, the Funds failed to meet margin calls made by Credit Suisse as prime broker to the Funds , and a default notice was issued on October 16, 2008. Given the economic climate in September 2008 and the Funds' asset position, the Funds' board believed that the Funds would be unable to meet the margin calls.

21. Because the Funds were unable to meet their obligations to Credit Suisse and were likely unable to meet the likely amount of margin payments, on October 16, 2008 the Directors presented petitions to the Bermuda Court to wind up the Funds. A copy of the Master Fund petition is attached to the Morrison Declaration as Ex. I; a copy of the Feeder Fund petition is attached to the Morrison Declaration as Ex. J. On the same day, Messrs Heis, Thresh, and I were appointed as joint provisional liquidators of the Funds. The effect of the order appointing the provisional liquidators under Bermuda law was that the directors no longer had any powers to act on behalf of the Funds and the provisional liquidators assumed these powers.

22. On November 21, 2008 the Bermuda Court ordered that the Funds be wound up. A copy of the Master Fund's winding-up order is attached to the Morrison Declaration as Ex. K; a copy of the Feeder Fund's winding up order is attached to the Morrison Declaration as Ex. L.

23. On March 5, 2009, by order of the Bermuda Court, Messrs Thresh, Heis, and I were jointly appointed as the liquidators of the Master Fund and a committee of inspection for

the Master Fund (the "Master CoI") was appointed consisting of representatives of Hampshire County Council and Credit Suisse Securities (Europe) Limited. See Ex. B.

24. On April 16, 2009, by order of the Bermuda Court, Messrs Thresh and Heis and I were jointly appointed as the liquidators of the Feeder Fund and a committee of inspection for the Feeder Fund (the "Feeder CoI") was appointed consisting of representatives of Hampshire County Council, SG Hambros Bankers Trust (Bahamas) Limited, and Citco Global Holdings NV as custodian for entities controlled by Liongate Capital Management Limited. See Ex. B.

25. The Feeder CoI has authorized the Joint Liquidators to filed this chapter 15 application on behalf of the Feeder Fund. On June 22, 2011 the Bermuda Court authorized the Joint Liquidators to commence this Chapter 15 case. See Ex. D.

## II. History of the Liquidation

26. Since the appointment of Messrs Heis, Thresh, and myself as joint provisional liquidators in October 2008, and as Joint Liquidators in March and April 2009, our business and purpose on behalf of the Funds has been the preservation and realization of their assets for the purposes of an orderly and equitable distribution, in compliance with Bermuda insolvency law, to their creditors and other lawful claimants.

### A. Close-outs of prime-broker and counterparty agreements

27. The Prime Brokers and ISDA Counterparties have closed out their trades with the Funds. The close out process resulted in the Joint Liquidators recovering over $10.0 million dollars for the Feeder Fund. The Joint Liquidators have also recovered $11.85 million for the Master Fund.

28. The Prime Brokers and counterparties have submitted approximately $170 million in claims against the Funds. The Joint Liquidators have reviewed these claims, but have not yet made a determination of these claims.

B. <u>Investigation of the Funds' Financial Affairs And Resulting Actions</u>

29. Following their appointment, the Joint Liquidators commenced a comprehensive investigation of the Funds' financial affairs. As part of this investigation, the Joint Liquidators have reviewed voluminous documents under the control of the Funds and additional documents received from the Funds' service providers. The Joint Liquidators have also met with service providers, investors and other stakeholders and have made regular reports to the Bermuda Court and to the Feeder CoI.

30. On 3 November 2008, the Joint Liquidators reported to investors that the Funds' books and records indicated that the value of the Master Fund as of 30 September 2008 was $738,209,753. A copy of the letter sent to investors is attached to the Morrison Declaration as Ex. N. However, after the provision of close-out statements by counterparties it became apparent that the Funds in fact owed over $150 million to counterparties

31. Through their investigation, the Joint Liquidators uncovered evidence that certain of the securities purchased by the Funds had been overvalued. The Joint Liquidators are continuing to investigate the effect of these valuation discrepancies.

32. As a result of their investigations thus far, the Joint Liquidators have commenced proceedings outside of the United States against certain of the Funds' service providers arising out of the flawed valuations. These proceedings remain ongoing.

33. Additionally, the Joint Liquidators' investigations remain ongoing. Indeed, the Joint Liquidators believe that certain entities in the United States may have documents or other

information regarding the Funds' financial affairs. The Joint Liquidators believe it possible that they may uncover additional claims against United States entities arising out the misvaluation of certain of the Funds' assets.

## **RELIEF REQUESTED**

34. In furtherance of their duties as the Joint Liquidators, Petitioners seek an Order of this Court substantially in the form of the proposed order annexed hereto as Exhibit A, granting the following relief necessary to best advance the Bermuda Proceedings:

(a) Recognition of the Bermuda Proceedings as foreign main proceedings as defined in § 1502(4) of the Bankruptcy Code;

(b) Granting relief as of right upon recognition of a foreign main proceeding pursuant to § 1520 of the Bankruptcy Code;

(c) Granting further additional relief as authorized by § 1521 of the Bankruptcy Code, including, without limitation:

(i) staying execution against the Funds' assets to the extent not stayed under § 1520(a);

(ii) authorizing Petitioners to seek leave to conduct discovery concerning the Funds' assets, affairs, rights, obligation or liabilities;

(iii) otherwise giving full force and effect to the Bermuda Proceedings; and

(iv) awarding Petitioners such other and further relief as this Court may deem just and proper.

35. In the event the Court determines that the Bermuda Proceedings are not eligible to be recognized as foreign main proceedings, Petitioners seek recognition of the Bermuda Proceedings as foreign nonmain proceedings, as defined in 11 U.S.C. § 1502(5), and request that

the Court grant the relief authorized by § 1521 of the Bankruptcy Code and such other and further relief requested in the paragraph above.

**BASIS FOR SUCH RELIEF**

36. For the reasons more fully discussed in the Memorandum of Law filed contemporaneously herewith, the Bermuda Proceedings are entitled to recognition under section 1517 of the Bankruptcy Code because:

    (a) the Bermuda Proceedings are (i) foreign proceedings within the meaning of section 101(23) of the Bankruptcy Code, (ii) foreign main proceedings within the meaning of section 1502(4) of the Bankruptcy Code because the Bermuda Proceedings are being conducted in the location of the Funds' center of main interests, and (iii) in the alternative, foreign nonmain proceedings because they are pending in a location of the Funds' establishment;

    (b) The Joint Liquidators are foreign representatives within the meaning of section 101(24) of the Bankruptcy Code; and

    (c) the Chapter 15 Petitions meet the requirements of section 1515 of the Bankruptcy Code.

37. Moreover, recognizing the Bermuda Proceedings would not be manifestly contrary to the public policy of the United States, as prohibited by section 1506 of the Bankruptcy Code. In fact, granting recognition would further the stated policy goals of chapter 15 of the Bankruptcy Code by promoting cooperation between courts, allowing for the fair and efficient administration of cross-border insolvencies, and facilitating the protection and maximization of the Funds' assets.

38. Indeed, chapter 15 recognition will enhance and facilitate the ability of the Joint Liquidators to fulfill their duties to investigate the affairs of the Funds and realize upon and

distribute the Funds' assets in accordance with Bermuda insolvency law. Specifically, chapter 15 recognition will (i) afford the Joint Liquidators the right to seek discovery to complete their investigation of the Funds' financial affairs and, in addition, analyze claims against those parties bearing liability to the Funds; (ii) provide the Joint Liquidators with access to United States courts in connection with the pursuit of any such claims, (iii) protect the recoveries made by the Joint Liquidators in the United States from piecemeal attack; and (iv) providing a means to ensure that such recoveries will be distributed through the Bermuda proceedings in accordance with Bermuda insolvency law.

## CONCLUSION

WHEREFORE, Petitioners respectfully request that this Court enter an Order, substantially in the form of the proposed Order Recognizing Foreign Main Proceedings and Granting Related Relief annexed hereto as Exhibit F, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: June 30, 2011
      New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

/s/ Susheel Kirpalani
Susheel Kirpalani
Scott C. Shelley
Robert K. Dakis

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone No.: (212) 849-7000

*Counsel to Joint Liquidators of Millennium Global Emerging Credit Master Fund and Millennium Global Emerging Credit Fund*

# **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Michael W. Morrison declares as follows:

I am a Managing Director of KPMG Advisory Limited, Crown House, 4 Par-la-Ville Road, Hamilton HM08, Bermuda and, together with Charles Thresh and Richard Heis, have been appointed as a Joint Liquidator of the Funds. I have full authority to verify the foregoing Verified Petition Of Foreign Representatives Michael W. Morrison, Charles Thresh And Richard Heis In Support Of Application Of Millennium Global Emerging Credit Master Fund Limited And Millennium Global Emerging Credit Fund Limited For Recognition Of Foreign Main Proceeding Pursuant To Section 1517 Of The Bankruptcy Code And Seeking Related Relief. I have read the foregoing Petition for Recognition, and am informed and do believe that the allegations contained therein are true and accurate to the best of my knowledge information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of June 2011.

_____
Michael W. Morrison